**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

**Tony Von Carruthers**
**Case No. 2:08-cv-02425-TLP-cgc**

# CONSOLIDATED ADVOCACY LETTER OF DONALD ASKEW JR.

October 20, 2026

Donald Askew Jr.
843 Breedlove St.
Memphis, TN 38107
Donaldaskew@gmail.com

Office of the Clerk
Supreme Court of the United States
1 First Street, NE
Washington, DC 20543

Clerk of Court
United States Court of Appeals for the Sixth Circuit
540 Potter Stewart Courthouse
100 East Fifth Street
Cincinnati, OH 45202

Clerk of Court
United States District Court for the Western District of Tennessee
167 North Main Street, Suite 300
Memphis, TN 38103

Re: Tony Von Carruthers - Request for Meaningful Review of Alleged Constitutional Violations, Withheld and Destroyed Evidence, Retaliation, and Treatment in Custody; Urgent Need for Alfredo Shaw's FBI File

Dear Clerks of Court and Honorable Justices and Judges:

My name is Donald Askew Jr. I am a United States Army veteran writing as a concerned citizen and advocate for Tony Von Carruthers. I respectfully urge the appropriate federal courts, in any properly presented proceeding within their jurisdiction, to examine the full record of alleged injustices surrounding his conviction, death sentence, access to evidence, and treatment in state custody.

I believe Tony is innocent. I ask that the evidence supporting his claims receive meaningful judicial examination before any irreversible punishment is carried out. The concerns described below are interconnected and should be considered together where the law permits.

**1. Alfredo Bernard Shaw's informant relationships and benefits**

Our records efforts have identified prosecution witness Alfredo Bernard Shaw with the following informant identifiers:

- FBI confidential informant #938188EA7
- Memphis Police Department informant #1069
- Shelby County Sheriff's Office informant #2282

I request lawful examination of records concerning Shaw's informant activities, payments, dismissed charges, promises of leniency, protection, agreements, and other benefits offered, expected, or received. The review should establish what prosecutors and investigators knew, when they knew it, and what was disclosed to Carruthers's defense.

**2. Possible retaliation arising from the 1990 altercation**

I request examination of whether Shaw's allegations against Carruthers were motivated by retaliation for their reported 1990 altercation at the Shelby County Jail, 201 Poplar Avenue, Fourth Floor, Pod E.

According to the account provided through our advocacy, the altercation involved a dispute over a telephone. This prior conflict raises a significant question about whether Shaw had a personal motive to fabricate allegations against Carruthers.

The review should determine whether prosecutors and investigators knew about the altercation, whether Shaw gave inconsistent dates or descriptions of it, and whether the defense and jury received information necessary to evaluate possible hostility, bias, or retaliation.

The central question is whether Shaw used his relationship with law enforcement to pursue a personal grievance - and whether any government official knew of, encouraged, or knowingly relied on a fabricated account.

**3. Allegedly false testimony, recantations, and pressure**

Our advocacy has raised concerns about Shaw's account of an alleged confession by Carruthers, his reported recantations, and allegations that promises or threats influenced his testimony.

I request examination of original recordings, interviews, statements, and related communications, including the reported February 28, 1996 televised recantation. The review should determine whether government officials knew testimony was false or misleading and whether the defense and jury received information necessary to evaluate Shaw's credibility.

**4. Whether the alleged encounter could have occurred**

Questions remain about Shaw's protective-custody status, housing assignments, movement restrictions, and opportunities for contact with Carruthers.

I request lawful review of surviving jail housing, escort, movement, library, disciplinary, and incident records concerning the alleged encounter and the earlier altercation. Where records no longer exist, their retention history and available alternative evidence should be examined.

These materials may bear directly on whether Shaw could have obtained the alleged confession as claimed.

**5. Who authorized or facilitated the Crime Stoppers reports**

I request examination of Crime Stoppers reports attributed to Shaw, including reports identified in our records efforts as #1366 and #1367, dated March 28, 1994, subject to confirmation against the originals.

Who requested, directed, encouraged, approved, facilitated, received, or reviewed these reports? Did Shaw act independently, or did a government representative participate? Did he receive or expect a reward, leniency, protection, or another benefit?

Relevant materials include original reports, intake forms, recordings, telephone records, reward records, officer notes, supervisory approvals, and communications with prosecutors. The review should determine whether the reports differed from Shaw's later statements, how they were used in the investigation or prosecution, and whether the defense received them.

Potential custodians include Crime Stoppers, the Memphis Police Department, the Shelby County Sheriff's Office, and the Tennessee Attorney General's Office. Related correspondence with Debra L. Fessenden should also be preserved and examined to identify appropriate custodians and the disposition of requested records.

**6. Urgent need for Shaw's FBI file; FOIA and Touhy requests**

We need lawful access to Alfredo Bernard Shaw's FBI confidential informant file, identified in our records efforts as #938188EA7, including associated FD-302 reports, statements, payment records, cooperation agreements, and communications with state and local authorities.

We have submitted Freedom of Information Act (FOIA) requests and a Touhy request seeking relevant records. The unresolved question is whether the FBI file contains evidence that Shaw fabricated allegations against Carruthers, received undisclosed benefits, acted out of retaliation following their reported 1990 altercation, or received direction or assistance from government officials.

I respectfully ask that, in an appropriate proceeding, the court consider ordering production through available lawful procedures, including confidential judicial review and protective measures where warranted. Any favorable evidence subject to disclosure should be provided to Carruthers's counsel.

I also request preservation and appropriate consideration of our requests, agency responses, and resulting productions. Submission of these requests does not mean that the records have been released or that testimony or production has been authorized.

We are asking that the file's contents be examined before an irreversible punishment is carried out. The review should establish whether relevant records were sought, obtained, shared among agencies, or disclosed to the defense.

**7. John Henry Bledsoe III's involvement with Shaw and the Earley Story matter**

I request examination of information brought to our attention concerning John Henry Bledsoe III's alleged representation of Alfredo Bernard Shaw in connection with the Earley Story secret-indictment matter, and the alleged failure to disclose Shaw's informant records to Carruthers's defense.

The relevant records should establish Bledsoe's precise role, the chronology of his involvement, what he knew about Shaw's informant activities and benefits, and whether that information was communicated to officials handling Carruthers's prosecution or subsequent litigation.

If the records establish that Bledsoe represented Shaw or otherwise possessed information bearing on his credibility, the review should determine whether relevant information was disclosed to Carruthers's defense and, if not, why. Any privilege or confidentiality question should be addressed through appropriate judicial procedures.

**8. Timothy A. ("Tim") Beacham's correspondence and withheld records**

Our records efforts include correspondence with Timothy A. ("Tim") Beacham concerning the Tennessee Attorney General's Office's production of non-exempt Shaw-related records and its explanations for withholding other materials.

I request preservation and lawful review of this correspondence and the underlying responsive records. The review should establish what was produced, what remains withheld, and whether any withheld material contains evidence that should have been disclosed to Carruthers's defense.

I ask the courts to examine the criminal-disclosure questions separately from the grounds asserted for withholding records from a public-records requester.

**9. Destruction of Shaw's files and identification of everyone involved**

Correspondence received during our records efforts states that Shaw prosecution files described as unrelated to Carruthers were destroyed on June 25, 2020.

Describing those files as unrelated does not resolve whether they documented Shaw's informant activities, benefits, inconsistent statements, or relationships with officials involved in Carruthers's case.

We need to determine whether Shaw acted alone in fabricating allegations against Carruthers or whether anyone else directed, encouraged, assisted, or knowingly used a fabricated account. The destroyed files may have helped establish how many individuals were involved and what each person knew or did. Their destruction may also have impaired the ability to identify other defendants whose cases relied on Shaw's information.

I request examination of who authorized the destruction, what records were destroyed, what retention and preservation obligations applied, and whether copies survive with other agencies, courts, or former counsel. Surviving destruction logs, inventories, correspondence, electronic backups, and transfer records should be preserved and lawfully reviewed.

The courts should determine whether the destruction deprived Carruthers of material evidence, whether officials acted in bad faith, and what relief is warranted. Responsibility should be established through evidence identifying each participant's conduct.

**10. Unmatched fingerprints, unidentified DNA, and laboratory communications**

Additional concerns involve reported unmatched fingerprints and unidentified male DNA associated with the investigation.

I request examination of laboratory reports, comparison results, exclusions, available identification information, and communications among investigators, prosecutors, and forensic personnel - including relevant laboratory telephone logs.

The review should establish what the forensic evidence shows, whether available comparisons identified or excluded individuals, and whether favorable results or communications were disclosed to the defense.

**11. Forced self-representation and restrictions on questioning Shaw**

I request review of the circumstances under which Judge Joseph B. Dailey required Carruthers to represent himself in a capital murder trial.

I also request examination of the trial exchange in which an objection was reportedly sustained when Shaw was asked whether he was a government informant. The transcript should establish what questioning was permitted, what the jury learned, and whether Carruthers had a meaningful opportunity to expose Shaw's possible bias, retaliatory motive, and incentives.

**12. Official responsibility, procedural barriers, and unequal treatment**

I request examination of the knowledge and conduct of John Wheeler Campbell, Phillip Gerald Harris, John Henry Bledsoe III, and other involved officials, according to each person's role and the evidence.

Who possessed relevant records? Who received notice of possible false testimony or nondisclosure? What representations were made to courts? What corrective action followed?

The review should also address when favorable evidence became available, whether government nondisclosure prevented earlier presentation, and any properly supported claims of racial discrimination, bias, or unequal treatment.

Procedural history should be examined alongside the history of evidence disclosure so that the reasons for any delay are accurately understood.

**13. Reported execution-related harm and medical neglect**

Carruthers has reported serious harm associated with the reported May 21, 2026 execution attempt and concerns about subsequent medical care.

I request preservation and lawful examination of execution logs, medical records, staff instructions, incident reports, and communications. His account concerning Warden Kenneth Nelson and Dr. Mark Walton Fowler should be evaluated against those records and qualified medical evidence.

These concerns warrant examination through appropriate proceedings, alongside the challenges to his conviction and sentence where procedurally permitted.

**14. Notice to Governor Bill Lee's office and other officials**

I have sought review through certified clemency correspondence delivered to Governor Bill Lee's office, as well as communications sent to Erin Merrick during her service there.

I request preservation of those submissions, delivery confirmations, attachments, internal referrals, and responses. They may establish which concerns and supporting materials reached officials and what action followed.

**Requested consideration**

Within each court's jurisdiction and applicable procedures, I respectfully support:

1. Meaningful review of properly presented constitutional claims concerning withheld evidence, allegedly false testimony, informant benefits, retaliation, self-representation, discrimination, and treatment in custody.
2. Preservation and lawful examination of surviving informant, prosecution, investigative, Crime Stoppers, jail, forensic, execution, and medical records, with particular attention to obtaining and reviewing Shaw's FBI file through lawful procedures.
3. Examination of destroyed records, the circumstances of their destruction, and available surviving copies or substitute evidence.
4. Identification of every person shown by the evidence to have directed, assisted, encouraged, or knowingly used fabricated allegations.
5. Consideration of the combined significance of the evidence and alleged violations where legally appropriate.
6. Appropriate proceedings to resolve material factual disputes and determine individual responsibility.
7. Appropriate relief, including a stay of execution if properly requested and legally warranted, while substantial constitutional questions are reviewed.

I understand that this advocacy letter does not substitute for a petition, motion, or other required filing. I ask that these concerns receive meaningful consideration when presented through the proper legal process.

Public confidence depends on courts confronting credible evidence that a government witness misled a jury, favorable evidence was withheld, records were destroyed, or a person facing execution was denied a fair proceeding.

Tony Von Carruthers's life deserves a careful examination of the complete record. I respectfully ask that no irreversible punishment occur before substantial, properly presented constitutional questions receive the review the law requires.

Respectfully,

Donald Askew Jr.
United States Army Veteran
Advocate for Tony Von Carruthers